IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA HANNAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 6648 |
| ) | |
| COUNTY OF COOK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pamela Hannah claims that her employer, the Cook County Bureau of Health Services, violated the Americans with Disabilities Act, 42 U.S.C.§ 12101, by failing to accommodate her disabilities. The County has moved for summary judgment, arguing that Hannah is not disabled as the ADA defines the term and that she was not regarded as disabled. For the reasons stated below, the Court grants the County's motion.

### Facts

Hannan began working for Cook County as a nurse in 1994. In 1995, Hannah was injured at work and was diagnosed with cervical degenerative disc disease and bilateral carpal tunnel syndrome. As a result of these injuries, Hannah's doctor placed her on the following permanent restrictions: no lifting; no pushing or pulling more than fifteen to twenty pounds; no repetitive lifting, pushing, pulling, or squatting; no sitting longer than two hours without stretching; and no standing longer than thirty minutes without a break. Hannah presented these

1

restrictions to the County, and the County accommodated them by transferring Hannah to a clerical position in the neurology department. In 1998, Hannah was authorized to take a leave of absence from the clerical position to attend a month-long "work hardening" program recommended by her doctor.

After she completed the work hardening program, Hannah was placed back into a nursing position. In 2001, Hannah applied for and received a promotion to the position of Clinical Nurse II. After being promoted, Hannah was transferred to a nursing position in the Child Advocacy Center. While there, she was disciplined for ordering lab tests that a doctor had not approved. Hannah was suspended for three days and was reassigned to a nursing position in the General Medicine Clinic. In December 2002, Hannah felt numbness in her hands while pushing a patient. She consulted her doctor, who authorized her to remain off of work from December 23, 2002 through January 27, 2003.

On January 27, 2003, Hannah presented a letter from her doctor to the County authorizing her to return to work on January 29 with the following restrictions: no lifting, pulling or pushing more than ten pounds with either arm; no reaching above the head; and no prolonged sitting, standing, or walking. The County refused to allow Hannah return to her position in the GMC with these restrictions, stating that Hannah could not perform her nursing duties under these conditions. The County advised her to apply for open positions for which she could be accommodated. Hannah applied for approximately 18 nursing positions with the County, but did not receive any of them.

From February 2003 through September 2003, Hannah was examined several times by doctors in the County's Employee Health Services. In the last examination, Dr. Kranzler, a

neurosurgeon, determined that Hannah had mild cervical radiculpathy and numbness in her hands and that her symptoms were mostly well controlled. Dr. Kranzler determined that Hannah could return to work, with the only restriction being a twenty pound lifting limit. The County accepted this modified restriction and allowed Hannah to return to work as a nurse. The County placed her in the Ear, Nose, and Throat Clinic, which it claimed was well-suited to accommodate the lifting restriction, on November 2, 2003.

In February 2003, Hannah had filed a claim of disability discrimination with the EEOC, alleging that the County violated the ADA when it refused to allow her to return to work in January 2003. On June 26, 2003, Hannah was issued a right-to-sue letter from the EEOC. Hannah filed her initial complaint in this court in September 2003, and amended the complaint in April 2004. In the amended complaint, Hannah asserts that she suffered damages as a result of the County's failure to accommodate her disabilities for a forty-one week period from January 2003 to November 2003.[1]

## Discussion

Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In

---

[1] The amended complaint also suggests a claim of wrongful termination. Hannah alleges that she suffered and continues to suffer damages "[a]s a direct and proximate consequence of Cook County's unlawful and discriminatory *termination*." Am. Comp. ¶ 21. The evidence presented and the briefs, however, suggest that Hannah was never fired by the County. In its motion for summary judgment, the County claims that Hannah charges it with failure to accommodate her alleged disability. Hannah accepts the County's description of her case as a failure to accommodate for a closed period of time in her response to the motion. *See* Response at 1 ("Plaintiff acknowledges the accuracy of the Introduction describing the procedural history of this case as contained in Defendant's Memorandum in Support of its Motion for Summary Judgment ..."). Moreover, Hannah does not claim in her response that she was terminated by the County. Thus, the Court will treat her claim as a claim of failure to accommodate.

3

considering whether there are genuine issues of material fact for trial, we are required to consider all evidence and draw all reasonable inferences in favor of Hannah, the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

1. Judicial Estoppel

The County argues that Hannah's ADA claim is barred by the doctrine of judicial estoppel because Hannah has applied for temporary total worker's compensation benefits for the same time period during which she claims be eligible for protection under the ADA. Judicial estoppel "precludes parties from abandoning positions taken in earlier litigation." *Stensrud v. Szabo Contracting Co.*, No. 98 C 878, 1999 WL 592110, *3 (N.D. Ill. Aug. 2, 1999) (citing *Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987)). In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805-06 (1999), the Supreme Court held that the principles of judicial estoppel may apply to bar a claim made under the ADA when the plaintiff has received disability benefits. There is no indication that Hannah was awarded worker's compensation benefits, so it is unclear whether any estoppel would exist. *See id.* at 805. But even if the doctrine of judicial estoppel applies, Hannah's application for total temporary worker's compensation benefits does not include a statement that she was unable to work. *See Murphey v. City of Minneapolis*, 358 F.3d 1074, 1078 (8th Cir. 2004) (judicial estoppel did not apply to bar plaintiff's ADA claim because he did not assert in his application for disability benefits that he was completely disabled). Indeed, Hannah's application states only that she injured her neck and back while transporting a patient. Def. Ex. 37. This statement is not inconsistent with her claims of disability discrimination in this case. The Court therefore rejects the defense of estoppel.

2. Disability Discrimination

As a threshold requirement in establishing a prima facie case of failure to accommodate, Hannah must establish that she has a disability as defined by the ADA. *Moore v. J.B. Hunt Trans., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Hannah claims that she qualifies as disabled under all three standards.

A. § 12102(2)(A)

Hannah claims that her conditions substantially limit her ability to walk, perform manual tasks, and work[2], all of which are classified as major life activities. 29 C.F.R. § 1630.2. The County admits that Hannah has physical impairments but argues that the impairments do not substantially limit any life activities.

In determining whether an individual is substantially limited in a major life activity, the Court considers the "nature and severity," as well as the "duration" and "permanent or long term impact" of the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). To qualify, the impairment must have substantially limited these major life activities such that Hannah was unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can

---

[2]Hannah does not clearly state that she was substantially limited in her ability to work. In her response to the County's motion for summary judgment, she states:
> Plaintiff was faced with the choice of taking medication that made her so drowsy she could [not] stay awake or not taking the medication and being unable to walk, bend, sit or stand – all of which substantially limited the major life activities of performing manual tasks and walking. The major life activity of work was simply out of the question.

Resp. at 6. For purposes of the motion for summary judgment, however, the Court will assume that Hannah claims to be substantially limited in her ability to work.

5

perform a major life activity as compared to an average person in the general population. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 505 (7th Cir. 1998). In the present context, the issue is whether the evidence would support a decision by a reasonable trier of fact that Hannah is substantially limited in one or more major life activities. We conclude that the evidence does not support such a decision.

Hannah does not provide sufficient evidence on which to base a claim that she was, at the relevant time, substantially disabled in her ability to walk. The only evidence she provides regarding the severity of her impairment are the restrictions imposed by her doctor in 1996, specifically, that she could not stand longer than thirty minutes without taking a break, and the restrictions imposed in 2003, namely that she could not walk for a prolonged period. Though this tends to establish that Hannah had difficulty walking, it does not establish that her ability to walk was substantially limited. In situations in which plaintiffs faced far more severe limitations on walking, courts have found that the ability to walk was not substantially limited. *See Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1067 (N.D. Ill. 2001) (the fact that plaintiff could walk only two blocks at a very slow pace before feeling short of breath constituted only a moderate restriction, not a substantial limitation, on her ability to walk); *Puoci v. City of Chicago*, 81 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (plaintiff who walks with a limp, has numbness in his legs, and cannot walk long distances is not substantially limited in his ability to walk); *see also, Ryan v. St. Mary of Providence*, No. 00 C 2453, 2001 WL 1143249, *4 (N.D. Ill. Sept. 28, 2001) (Kennelly, J.) (plaintiff's inability to walk more than two or three blocks without stopping to rest did not qualify as a substantial limitation on walking). Thus, Hannah's inability to walk or stand for long periods without resting does not rise to the level of a substantial limitation on Hannah's

ability to walk.

Hannah also claims that she was completely unable to walk because the pain medication she had to take for the first six months after she was injured in 1995 made her extremely drowsy. And without the pain medication, Hannah claims she had too much pain in her lumbar area to walk. This establishes, at most, that Hannah was temporarily limited in her ability to walk in 1995-1996. It is well settled that the "temporarily disabled are not protected by the Americans with Disabilities Act." *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197 (7th Cir. 1997). And in any event, the period at issue in this case is 2003, not 1995-1996. After the six month period during which Hannah had to take the strong pain medication, the only limitation on her walking was the permanent restriction of standing no more than thirty minutes without a break. As discussed, this limitation, though permanent, was not severe enough as to qualify as a disability within the meaning of the ADA.

Hannah next claims that she was substantially limited in her ability to perform manual tasks. When the major life activity of performing manual tasks is at issue, "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives," such as "household chores, bathing, and brushing one's teeth." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 200 (2002). Hannah states that because she suffered from carpal tunnel syndrome, she experienced pain and numbness in her hands which prevented her from ironing, doing laundry, cleaning, and caring for her son, who was five and half years old at the time she was injured. The only time Hannah states that she was completely prevented from these types of activities, however, was during the six month period following her original injury in 1995. For the reasons described above, this is not sufficient to sustain a claim. *See id.* at 198

(for an impairment to be substantially limit the ability to perform manual tasks, the impairment's impact must be permanent or long-term).

Following that six month period, it appears that Hannah was restricted only in her ability to perform manual tasks to the extent her doctor limited her activity. These restrictions, which included no repetitive lifting, pushing, pulling, or squatting, and no lifting over fifteen to twenty pounds, are not severe enough as to qualify as a disability under the ADA. Though carpal tunnel syndrome and disc degenerative disease are, without question, significant impairments, Hannah has not made a showing sufficient to permit a reasonable jury to find that she was substantially limited in performing manual tasks due to her impairments. *See Kahn v. Cook County*, No. 96 C 1113, 1997 WL 370199, *7 (N.D. Ill. June 27, 1997) (plaintiff's inability to lift more than fifteen to twenty pounds, write longer than fifteen minutes, and perform repetitive tasks with her hands does not constitute a substantial limitation on the ability to perform manual tasks).

Finally, Hannah claims that she was substantially limited in the major life activity of working. To make out such a claim, Hannah must provide evidence that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills abilities." *EEOC v. Rockwell International Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001). Hannah does not describe, however, what types of jobs she was precluded from performing. A plaintiff whose impairments are not so severe that her foreclosure from the job market is obvious (as in this case) must, at a minimum, "come up with some evidence of the types of jobs in her area from which she would have been excluded." *Ryan*, 2001 WL 1143249 at *4 (citing *Rockwell*, 243 F.3d at 1017). Hannah must at least provide some evidence from which a reasonable fact finder could conclude

that she faced significant restrictions on her ability to meet the requirements of a class or range of jobs. *Id.* (citation omitted); *Skorup*, 153 F.3d at 515 ("Without some evidence suggestion that [the plaintiff] is precluded from performing a class of jobs or a broad range of jobs in various classes, her impairment does not meet the definition of a disability under 42 U.S.C. § 12102(2)(A)."). Hannah fails to describe what types of jobs she was precluded from performing or why she was precluded from working during the relevant period in 2003. Hannah's only explanation for why she claims to be substantially limited in her ability to work is that during the six months after she was first injured, she had to take pain medication that made her so drowsy "work was simply out of the question," Pl. Resp. at 6; she does not identify how, during the period relevant to this case, she was substantially limited in her ability to work a broad range of jobs. For the relevant forty-one week period in 2003, Hannah can only show that her impairments made her unable to perform the nursing job in the GMC. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 525 (1999).

Hannah points to the permanent work restrictions imposed by her physician in 1996 and the restrictions imposed in 2003, which were similar but slightly more limiting, as evidence that she is substantially limited in the major life activity of working. The work restrictions alone, however, are not enough to permit her to avoid summary judgment. Though the 1996 restrictions were described as permanent, Hannah has not provided evidence from which a jury reasonably could find that she was substantially limited in her major life activity of working. *See Howard v. Navistar Intern. Transp. Corp.*, 904 F. Supp. 922, 929 (E.D. Wis. 1995), *aff'd*, 107 F.3d 13 (7th

Cir. 1997) (work restrictions of lifting no more than fifteen to twenty pounds, performing no high speed repetitive work, and working no more than four hours per day did not constitute a substantial limitation on the ability to work). Indeed, Hannah worked as a nurse and as a clerical from 1996 through 2003. In light of this evidence, no reasonable fact finder could find that Hannah was disabled within the meaning of the ADA during the relevant period on the basis of her work restrictions, and she has not provided the Court with any other evidence that would sustain such a claim.

B. § 12102(2)(B)

Hannah claims that even if she did not have disability that met the requirements of § 12102(2)(A), she had a record of such an impairment and was discriminated against because of that record and therefore qualified as disabled under § 12102(2)(B). To qualify as disabled under this provision, Hannah must show that she has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. *Davidson*, 133 F.3d at 509. Hannah claims that the restrictions placed upon her at various times throughout her employment since 1996 as a result of the carpal tunnel and disc disorder establish a record of such an impairment.

Hannah's work restrictions do not establish a record of impairment severe enough to qualify as a past disability. "A record or history of an impairment is not sufficient to establish disability; the record must be of an impairment that substantially limited a major life activity." *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1169 (1st 2002). In other words, the analysis under subsection (B) is the same as the analysis under subsection (A), the only difference being that subsection (B) protects individuals who previously had impairments that qualified as

10

disabilities, but no longer have the impairment. *Jenkins-Allen v. Powell Duffryn Terminals, Inc.*, 18 F. Supp. 2d 885, 892 (N.D. Ill. 1998) (quoting 29 C.F.R. § 1630.2(k)) (the purpose of subsection (B) is primarily to protect people who have recovered from "previously disabling conditions (cancer or coronary disease, for example) but who may remain vulnerable to the fears and stereotypes of their employers"). As already discussed, although Hannah had a record of impairments, no reasonably jury could find that they substantially limited any of her major life activities. Because Hannah's past impairment failed to fall under the definition of disability in § 12102(2)(A), she cannot sustain a claim under § 12102(2)(B). *Sinkler*, 209 F.3d at 683; *Bailey*, 306 F.3d at 1169.

C. § 12102(2)(C)

Our analysis of whether Hannah is currently disabled or was disabled in the past does not end the case, however, in light of her argument that he was "regarded as" disabled by the County. Under § 12102(2)(C), an employee is "regarded as having a disability" if her impairment does not substantially limit a major life activity, but the employer treats the employee as if she had such a disability. 29 C.F.R. § 1630.2(g)(3); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). If the employer believes that the employee has an impairment that causes her to be unable to work a particular class or broad range of jobs, then the employee is regarded as disabled. The focus of the analysis is the impairment's "effect upon the attitudes of others." *Byrne v. Board of Educ.*, 979 F.2d 560, 566 (7th Cir. 1992).

To avoid summary judgment on her claim under § 12102(2)(C), Hannah must provide evidence from which a jury reasonably could find that the County believed she was substantially limited in a major life activity. *Sutton*, 527 U.S. at 489. She can do so by showing that the

County mistakenly believed a non-limiting impairment substantially limited her in at least one major life activity. *Id.* Because Hannah claims that the County regarded her as disabled in the major life activity of working, Hannah must be able to show that the County not only believed she was impaired in her ability to work as a Clinical Nurse II in the GMC, but that she was substantially limited in her ability to work a particular class or broad range of jobs. *Skorup*, 153 F.3d at 515; 29 C.F.R. § 1630.2(l).

The only argument Hannah makes in support of her claim under § 12102(2)(C) is that the County must have regarded her as disabled on the basis of her restrictions because it transferred her from the nursing position to a clerical position in 1996 due to those restrictions. Hannah's argument assumes that an employer offers accommodation only if it thinks the employee suffers from a substantial limitation in a major life activity. The Seventh Circuit rejected this argument in *Cigan*, in which it held that a plaintiff is not regarded as disabled by her employer simply because the employer accommodated her impairments. *Cigan* holds that a plaintiff must provide reason to conclude that the employer, in accommodating the employee, was aware of the effect of her condition on the employee's major life activities. *Cigan*, 388 F.3d at 335.

Though Hannah does not explicitly make this argument, she could have argued that the County regarded her as disabled based on the fact that she was rejected for approximately eighteen nursing positions between the time that the County told her that her new restrictions could not be accommodated in the GMC and the time she was placed in the ENT clinic. This argument would fail. Hannah does not provide the Court with any of her applications or anything from the County reflecting why she was rejected for the positions. There are any number of non-discriminatory reasons that would explain why Hannah was not chosen for these

positions. Without some evidence, no reasonable jury could find that the reason had anything to do with her restrictions.

## Conclusion

For the reasons stated above, the Court grants the County's motion for summary judgment [docket no. 25]. The Clerk is directed to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Court

Date: April 27, 2005